IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

INT'L SHIPPING AGENCY,
INC.,

   Plaintiff,

   v.

UNIÓN DE TRABAJADORES DE
MUELLES LOCAL 1740, ET
AL.,

   Defendants.

CIV. NO.: 12-1996(SCC)

## OPINION AND ORDER

In this labor dispute, Plaintiff International Shipping Agency, Inc. ("Intership"), has filed a partial motion for judgment against the defendants Unión de Trabajadores de Muelles–International Longshoreman's Association Local 1740 ("UTEM" or "Local 1740") and Unión de Empleados de Muelles—International Longshoreman's Association Local 1901 ("UDEM" or "Local 1901"). After careful consideration, I deny Intership's motion.

## 1.  Preliminary Matters

The parties have raised a host of non-merits arguments that must be addressed before proceeding to the heart of the motion for summary judgment. In particular, Intership makes numerous arguments for why the defendants' summary judgment exhibits and statement of material facts should be struck, and UTEM asks that the proceedings be stayed. I take up these arguments below.

### 1.1 The defendants' exhibits are appropriately marked.

Intership complains that the defendants have not "physically identified or marked" their summary judgment exhibits. Docket No. 137, at 2. Though Intership purports to find such a requirement in Federal Rule of Civil Procedure 56 and its local analogue, *id.*, I can find no such requirement. The defendants' exhibits are labeled on CM/ECF, and even if physical markings would have been helpful, that practice sufficed. As to Intership's arguments regarding the defendants' supposed failure to cite to specific pages and paragraphs, it is notable that Intership itself doesn't cite to any such instance. My own perusal of the defendants' filings show that they are in substantial compliance with the Local Rules on this point. In any case, a few improper citations would result in deeming specific facts

admitted or denied, not the striking of the entire filing as Intership requests.

## 1.2 The defendants cannot use their objections to Intership's proposed facts as a vehicle for proposing additional facts.

Intership correctly points out that, throughout their objections to Intership's proposed facts, the defendants purport to "qualify" Intership's facts. To the extent the defendants have done so, facts stated during such qualifications shall not be deemed admitted; the facts admitted with qualifications will also be deemed admitted. It is thus unnecessary to strike them. To the extent that Intership asks the Court to strike the separately-proposed facts in the defendants' counterstatement on these grounds, its motion is denied as it conflicts with Local Civil Rule 56(c).

## 1.3 Intership fails to show that the defendants rely on sham affidavits.

At the heart of this case is a controversy over whether or not a collective bargaining agreement was in place in October 2012. To show that it was, Intership has proposed—and the defendants have admitted—various facts concerning the defendants' presidents invoking the CBA in various labor

disputes after that date. Now, in their counterstatement of material facts, the defendants, relying on sworn statements signed by their presidents, essentially state that it was common practice to invoke an expired CBA during labor disputes until a new one was signed. *See, e.g.*, Docket No. 131-2, ¶ 24.

According to Intership, these affidavits are shams, which is to say they impermissibly contradict the affiants' "clear answers to unambiguous questions" given during their depositions. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994). A sham affidavit may not be used to create an issue of fact at summary judgment unless the discrepancy is well-explained. *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 n.3 (1st Cir. 2005).

The initial problem for Intership, though, is that it fails to point out even a single discrete factual discrepancy between the affidavits and the deposition testimony; indeed, rather than offer any detail about those affidavits at all, Intership resorts to hyperbole and personal attack.[1] For this failure alone, I would

---

**1.**  It is plain that there is bad blood between the parties and their counsel. Throughout this case, that has manifested as over-litigiousness and histrionics. *See, e.g.*, Docket No. 88, at 2 (lamenting certain over-the-top accusations). Especially in the absence of developed argumentation, it does no good to refer, with bold and underlines, to "exponential sham

deny Intership's motion to strike the affidavits.

But the motion fails on its merits, too. At no point in its motion to strike or its statement of facts does Intership point to a statement in the presidents' depositions that the CBA was in effect as of October 26, 2012. And while they testified to invoking it in various proceedings, Intership at no time points to testimony where they explained *why* they did so, *i.e.*, whether it was because that is customary, or because the CBA was actually in effect. Thus, the summary judgment affidavits, in saying that the unions invoked the CBA because it was customary to do so despite the CBA's expiration does not in any way contradict a clear answer to an unambiguous question. To the contrary, it only contradict's Intership's theory of the case. The motion to strike the affidavits is denied.[2]

---

affidavit[s]" or claim that "logic is the missing point in Defendants' sham affidavits." Docket No. 137, at 6. It would behoove both sides to cut back on such attacks; the Court is unlikely to mistake the written equivalent of an angry harangue for convincing rhetoric.

**2.**   Intership writes in its motion that "[t]he deposition testimony of Sánchez and Mercado establish that" the CBA was extended as to all unions and that its mechanized-cargo stipulation was extended until December 31, 2012. Docket No. 137, at 5. But neither of the two paragraphs of its statement of uncontested facts that it cites for these propositions rely on Sánchez's or Mercado's deposition testimony.

### 1.4 The defendants' summary judgment should not be stricken as unauthenticated.

Courts in this district, the undersigned included, have regularly stricken summary judgment evidence not authenticated by an affidavit or other means. *See, e.g., Vélez-Sepúlveda v. GlaxoSmithKline P.R., Inc.*, Civ. No. 13-1909(SCC), 2015 WL 4389529, at *2 n.4 (D.P.R. July 15, 2015). Relying principally on a case from the Western District of Michigan, the defendants argue that this practice is incorrect after the 2010 amendments to Rule 56. After reviewing that case and others citing it, I agree with the defendants that the 2010 amendments brought an important change to summary judgment practice in this regard.

Before 2010, Rule 56(e) provided that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." *See also Foreword Magazine, Inc. v. OverDrive, Inc.*, Civ. No. 10-1144, 2011 WL 5169384, at *1 (W.D. Mich. Oct. 31, 2011) ("Former Rule 56(e) contained an unequivocal direction that documents presented in connection with a summary judgment motion

---

Docket No. 126, ¶¶ 71, 73. It is thus irrelevant whether those statements are contradicted by Sánchez's or Mercado's affidavits.

must be authenticated."). The 2010 amendments removed this language; now, the Rule makes no such affirmative requirement, placing upon the adverse party the burden to raise an objection. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible."). As the *Foreword* court pointed out, moreover, "the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." 2011 WL 5169384, at *2. After 2010, then, there is no longer a "bright-line rule," but, rather, "a multi-step process by which a proponent may submit evidence, subject to an objection by the opponent and an opportunity to either authenticate the document or propose a method to doing so at trial." *Id.* As *Foreword* points out, the drafters of the amendments apparently intended that an objection be denied based on an explanation of "the admissible form that is anticipated" at trial. Fed. R. Civ. P. 56 (2010 Advisory Committee notes), *cited by*, *Foreword*, 2011 WL 5169384, at *2. What would constitute such an explanation goes unsaid, and in *Foreword*, the proponent defeated the objection by filing authentication affidavits. 2011 WL 5169384, at *2.

A substantial number of courts have followed *Foreword*, and

I agree that it correctly interprets the 2010 amendments. Still, that leaves undetermined whether authentication affidavits are necessary to defeat a Rule 56(c)(2) objection, or whether a simple statement that a certain witness will vouch for the document at trial suffices. The First Circuit has not addressed this question, but in at least two cases judges from this district have interpreted Rule 56(c)(2) to permit summary judgment evidence not authenticated through a sworn affidavit. For example, in *Francis v. Caribbean Transport Ltd.*, Judge Besosa interpreted Rule 56(c)(2) as creating a "relaxed" standard and held that it required "nothing more" than "an unsworn declaration under penalty of perjury" to authenticate certain business records. 882 F. Supp. 2d 275, 279 (D.P.R. 2012). And in *Santos v. Nogueras*, Magistrate Judge López required even less, holding that a simple statement—in an opposition to a motion to strike—that the exhibits "were in [the plaintiff's] personal knowledge and that she [could] properly identify and authenticate them at trial" was sufficient to defeat a Rule 56(c)(2) objection. *Santos*, Civ. No. 11-1105(FAB/MEL), 2012 WL 2871108, at *4 (D.P.R. July 12, 2012). At a minimum the Fourth and Eighth Circuits have suggested that a relaxed standard of this sort is proper. *See, e.g., Humphreys & Partners Architects,*

*L.P. v. Lessard Design, Inc.*, No. 14-2030, 2015 WL 3854494, at *9
n.4 (4th Cir. June 23, 2015), *as amended* (June 24, 2015) (suggest-
ing that movant's post-objection submission of authentication
affidavits was unnecessary); *Gannon Int'l v. Blocker*, 684 F.3d
785, 793 (8th Cir. 2012) ("And the standard is not whether the
evidence at the summary judgment state would be admissible
at trial—it is whether it *could* be presented at trial in an
admissible form."). And numerous other district courts have
considered non-authenticated evidence after the 2010 amend-
ments. *See, e.g., Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d
816, 823 n.3 (E.D. Tex. 2014) ("[I]t appears that the letter *could
be* offered in admissible form . . . ." (emphasis added)); *Ridgell
v. Astrure*, Civ. No. 10-3280, 2012 WL 707008, at *9 (D. Md.
March 2, 2012) ("Defendant explains that it *could* certify any
unauthenticated records to cure this current defect in their
admissibility." (emphasis added)); *Richardson v. Miss. Dep't of
Human Servs.*, Civ. No. 10-198, 2012 WL 568285, at *3 (S.D.
Miss. Feb. 21, 2012). As these cases comport with Rule 56(c)(2)'s
plain language, I will follow them.

Turning to Intership's objections, it has frustratingly
declined to specify to which exhibits it is objecting, leaving to
the Court that job. To begin, though, it is plain that Intership's

objection—that the documents are unauthenticated—is itself improper. Pursuant to Rule 56(c)(2), an objection must state that the movant's evidence "*cannot* be presented in a form that would be admissible" at trial. Fed. R. Civ. P. 56(c)(2) (emphasis added). Because Intership makes no argument that the defendants' evidence could not be authenticated, its objection should be denied. *See, e.g., Abbott v. Elwood Staffing Servs., Inc.*, 44 F. Supp. 3d 1125, 1135 (N.D. Ala. 2014) ("[A]n objection cannot be based solely on evidence not being authenticated—the objection must be that evidence *cannot* be presented in an admissible form . . . ."); *Ridgell*, 2012 WL 707008, at *9 (denying objection because the party had failed to "actually argue that Defendant cannot produce admissible versions of the same for trial"); *Richardson*, 2012 WL 568285, at *3 (denying objection because the defendant "committed procedural error by failing to make the correct objection"); *Tzanetis v. Weinstein & Riley, P.S.*, Civ. No. 09-413, 2010 WL 3925250, at *2 (D. Conn. Sept. 28, 2010) (-same).

Because Intership failed to specify the exhibits to which it is objecting, and because it has failed to make the proper objection, I deny its motion to strike on these grounds. I note, however, that the defendants have provided a list of their

exhibits and explained why each could be presented in an admissible form. *See* Docket No. 141, at 11–13. For the most part, they note that the documents to which they cite are already in the record, were stipulated-to at the individual defendants' depositions, or were within the defendants' personal knowledge. It would seem, then, that even if Interhsip had not procedurally defaulted, the evidence would be admissible on summary judgment in any case, as there is every reason to think that it could be presented in an admissible form at trial.

### 1.5 The Mercado and Sánchez affidavits should not be struck as in violation of Rule 56's personal knowledge requirement.

Intership argues that Mercado's and Sanchez's affidavits must be excluded "in their entirety" because they are made on knowledge and belief, rather than personal knowledge alone. Intership is right that Rule 56 requires affidavits to be signed on personal knowledge. Fed. R. Civ. P. 56(c)(4). However, a review of the affidavits shows that they state facts that are within the affiants' knowledge as presidents of the defendant unions. It would a harsh result, then, to deprive the defendants of a merits ruling on account of a mistake (even if an obvious

one) in the affidavits' signature line. Thus, I will follow the example of the many judges in this circuit that have refused to wholly strike affidavits on these grounds and who have, instead, considered the affidavits to the extent that the stated facts appear based on personal knowledge. *See, e.g.*, *Vescom Corp. v. Am. Heartland Adm'rs, Inc.*, Civ No. 01-146, 2003 WL 21347205, at *1 (D. Me. Jan. 17, 2003) (relying on affidavit "to the extent that any factual assertion would be a matter of [the affiant's] personal knowledge in his role as [the defendant's] CEO"); *see also Reid v. Stanley*, Civ. No. 04-369, 2006 WL 1875335, at *1 (D.N.H. July 6, 2006) ("[O]nly the segments of the affidavit that meet the Rule 56(e) standard may be credited for the purposes of a motion for summary judgment."); *Donovan v. Magnusson*, Civ. No. 03-226, 2004 WL 1572598, at *1 (D. Me. June 7, 2004), *report and recommendation adopted*, 2004 WL 1770158 (D. Me. Aug. 4, 2004); *Smith v. Danzig*, Civ. No. 00-216, 2001 WL 823642, at *2 (D. Me. July 20, 2001). Thus, I deny Intership's general request to strike the affidavits; however, in considering the parties' statements of facts below, I will only rely on the affidavits to the extent that they state facts that would be within the affiant's personal knowledge.

### 1.6 The dispute over who represents Local 1901 does not preclude the Court from ruling on the motion for summary judgment.

Intership sued UDEM and its president, René Mercado. In the complaint, Intership identified UDEM as Local 1901, a union chartered by the ILA. UDEM and Mercado appeared and admitted these facts. Docket No. 34, ¶¶ 5–6. Sometime later, a dispute arose between the ILA and UDEM: the ILA put UDEM under a trusteeship, and UDEM voted to disaffiliate from the ILA; now, the whole issue is under litigation in a separate case. *See Unión de Empleados de Muelles de P.R. Inc. v. Int'l Longshoreman's Ass'n AFL-CIO*, Civ. No. 15-1750(FAB) (D.P.R. filed June 3, 2015). The precise identity of UDEM—and who is entitled to speak for it—is thus an open question, one which the defendants in this case have assiduously avoided answering.

Intership has now jumped into this void seeking advantage. Noting that the NLRB has held that UDEM was not a bona fide labor organization, Intership asks the Court to take "judicial notice" of the NLRB's findings and hold that the UDEM presided over by Mercado is not the real Local 1901, that it thus has no "standing" to dispute the motion for summary

judgment, and that summary judgment should be entered against the real Local 1901, which is in apparent default.[3] Docket No. 143, at 1. The Court will not follow this path.

The conflict over Local 1901 certainly presents a wrinkle, but it far from proves some of the wilder accusations included in Intership's filings. More importantly, the Court cannot take "judicial notice" of the NLRB's findings, at least not in a way that makes those findings binding in this case: it is impermissible for a Court to take judicial notice of another tribunal's factual findings. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998) (holding that facts adjudicated by a tribunal in a different case cannot be the subject of judicial notice), *cited approvingly by*, *Nadherny v. Roseland Prop. Co., Inc.*, 390 F.3d 44, 51–52 (1st Cir. 2004); *Cruz-Acevedo v. Toledo-Davila*, 660 F. Supp. 2d 205, 211 n.6 (D.P.R. 2009) (same); *cf. Stasiukevich v. Nicolls*, 168 F.2d 474, 479 (1st Cir.

---

**3.** Intership actually takes this "standing" argument a step further, arguing that it presents a "jurisdictional" bar to the defendants' reliance on Mercado's affidavit. This argument is frivolous. Intership *sued Mercado. Of course* Mercado can present evidence to defend himself. And even if Mercado had not been sued, there would be no "standing" or "jurisdictional" bar to any other party using his affidavit as evidence, so long as it was relevant.

1948) (holding that factual findings in an investigative report are evidence of facts, not a proper subject of judicial notice).[4] The NLRB's findings could be preclusive on other grounds, but Intership fails to make—much less sufficiently develop—any such argument, and so it is deemed waived.

Thus, it has not been established that the UDEM that appeared in this case is not the real party in interest; to the contrary, that is a live dispute in a separate case. Moreover, the relief that Intership requests—that the Court disregard UDEM's opposition and hold the "real" Local 1901 in default—is manifestly unjust. If Intership sued an impostor, and that impostor appeared and opposed Intership's motions, it is not at all clear why those events should be held against the non-appearing real party.

The question remains how to proceed given the dispute between UDEM and the ILA. Local 1740 asks that the Court stay this case pending a determination of the dispute. Docket No. 149. Notably, as Local 1740 points out, Judge Casellas has followed this course—with all the parties' consent—in another

---

4.   Likewise, and contrary to Intership's arguments, *see* Docket No. 136, at 2, the Court cannot take "judicial notice" of facts in a complaint in another case.

case involving Intership, Local 1740, and UDEM. *See Int'l Shipping Agency Inc. v. Unión de Empleados de Muelles de P.R., Local 1901 ILA*, Civ. No. 13-1756(SEC), ECF No. 67 (D.P.R. Aug. 13, 2015). Here, though, Intership "strenuously objects" to a stay. Docket No. 149, at 1. It does so, it says, because the stay was proposed by Local 1740 rather than Local 1901. But in my mind, this fact is beside the point. Instead, I am concerned about the possibility that the UDEM that has appeared is not the "real" UDEM; if that is the case, the "real" party is not represented and is without opportunity to defend itself. Intership suggests that the Court simply order the appearing UDEM to state whether or not it is Local 1901. Unfortunately, the issue is not so simple: it is not even clear that two entities exist, or, if they do, what their nature is. And of course this Court hardly has jurisdiction to decide that dispute if one of those two entities has not appeared here. Reserving the question for the Court in Civ. No. 15-1750 thus seems the most appropriate course.

  For these reasons, I will grant the stay, but I will not do so before ruling on the motion for summary judgment. This is for two reasons: first, because both the ILA—through Local 1740 and its counsel—and the Mercado-affiliated UDEM—through

its counsel—have had the opportunity to oppose Intership's motion; and second, because I decide the motion against Intership. For these reasons, UDEM/Local 1901, whatever its identity, cannot be prejudiced by the Court's ruling. But because going to trial without first deciding the ILA/UDEM dispute would risk subjecting one of those entities to judgment without representation, I will stay the case effective after the denial of summary judgment.

## 2. Factual Background

Plaintiff Intership is a Puerto Rico corporation engaged in the shipping and transportation business. It provides stevedoring services to shipping companies, loading and unloading vessels that import and export goods through San Juan, Puerto Rico.

Defendant UTEM, also known as ILA Local 1740, is a labor organization based in San Juan affiliated with the International Longshoremen's Association–AFL-CIO ("ILA"). UTEM represents stevedores working in San Juan, including employees of Intership. At all relevant times, Defendant Carlos Sánchez-Ortíz was the president of UTEM. Defendant UDEM is also a San Juan-based labor organization associated with the

ILA representing, among others, Intership employees.[5] At all relevant times, Defendant René Mercado was the president of UDEM. For decades UDEM and UTEM have represented Intership's employees, and the terms and conditions of that relationship have been embodied by collective bargaining agreements that have been extended from time to time.

Speaking more specifically, there appear to have been two separate contracts negotiated between the defendant unions and the employers. In these negotiations, the employers, Intership included, were represented by the Puerto Rico Steamship Association's Bargaining Committee. One contract applied to general cargo, and one applied to mechanized cargo. According to Miguel Ayala-Morera, the Vice-President of Luis Ayala Colón & Scrs. and, in 2012, the head of the Bargaining Committee, when it came to mechanized cargo—which is all Intership handled—the parties negotiated stipulations covering specific conditions, and everything not covered by a specific stipulation was covered by the general cargo contract.

---

**5.**   There is at present a dispute between UDEM and the ILA pending before Judge Besosa; UDEM claims to have disaffiliated from the ILA, while the ILA has purported to place UDEM in trusteeship. *See Unión de Empleados de Muelles de P.R. Inc. v. Int'l Longshoreman's Ass'n AFL-CIO*, Civ. No. 15-1750(FAB) (D.P.R. filed June 3, 2015).

It was in the 2004–2010 Mechanized Cargo Stipulation that the parties included no-strike and arbitration clauses; these clauses had been in effect since the signing of a 2001 agreement, which was incorporated into the 2004–2010 Mechanized Cargo Stipulation.[6] It is undisputed that the 2004–2010 Stipulation, including its no-strike and arbitration clauses, was extended beyond 2010,[7] and that these extensions applied to all the unions;[8] as I explain below, however, there is a dispute regarding just when these extensions expired. The general agreement, however, expired on September 30, 2013.

---

**6.** The defendants purport to limit this fact to UTEM, but no UDEM, "because those stipulations only apply to UTEM." Docket No. 131-1, ¶ 70. For this, the defendants cite generally to the 13-page stipulation. Of course, that violates the anti-ferret rule and the fact is deemed admitted. Moreover, the first page of the stipulation refers to both Locals 1901 and 1740.

**7.** The defendants purport to admit this with regard to Local 1740, but not Local 1901. No basis is stated for this partial denial, and this fact is deemed admitted. However, there is an issue of fact as to the remainder of Intership's proposed fact, which states that the agreement was extended on October 5, 2012, until December 31, 2012. Docket No. 126, ¶ 71. According to the defendants, the last extension expired on January 31, 2012. Docket No. 131-1, ¶ 71.

**8.** The defendants purport to qualify this fact, but they do so without citing the record. *See* Docket No. 131-1, ¶ 72. The fact is deemed admitted.

It is agreed that the Mechanized Cargo Stipulation was extended at least five times, including a written extension until January 31, 2012.[9] After January 2012, various drafts of a written extension were circulated, but none were apparently signed.[10] According to Intership, there was also a verbal extension that was effective through at least October 2012; this fact is disputed by the defendants.

In spite of these undisputed facts, Intership, relying on Mercado's deposition testimony, proposes that the "general agreement" establishes the arbitration procedures even for companies, like Intership, that work only with mechanized cargo. Docket No. 126, at 36. The deposition, however, is ambiguous on this point. Mercado is first asked whether "the

---

**9.** Intership purports to deny the facts in this paragraph, but it does so solely on the basis of arguments made in its motion to strike, which arguments have been rejected. The facts are thus deemed admitted.

**10.** The defendants propose that the Asociación de Navieros "recognized that the" Mechanized Cargo Stipulation "expired on January 2012." Docket No. 131-1, ¶ II.10. For this, they rely on an undated declaration (bearing a marginally-legible "received" stamp with the date March 16, 2012) purporting to stipulate to that fact, but also extend certain agreements until May 31, 2012. Docket No. 131-14. The proposed fact is deemed denied, however, because it is unsigned by any representative of the Asociación. *Id.*

general agreement provide[s] for" the arbitration procedure.
Docket No. 130-3, at 12. He responds, "Yes, *but* it is the same
one that is used for, for the mechanized one." *Id.* (emphasis
added). This suggests that there are two agreements—a
general one and a mechanized one—and that the mechanized-
cargo agreement uses the general agreement's arbitration
procedures. That this is the case is driven home by Mercado's
statement that "it"—presumably, the procedures—"was
adopted when the stipulations of mechanized cargo were
made." *Id.*; *see also id.* ("In other words, the general conditions
were adopted . . . ."). Intership's counsel then asks whether the
agreements were "integrated." *Id.* Of course, this was an
improper question, as it asked for a legal conclusion. In any
case, Mercado's response to the question is not clear. Then,
after further questioning, Mercado reiterates that there were
"two contracts." *Id.* at 26. And though he says that the "general
provisions" of the CBA "apply to the mechanized cargo," it is
not at all clear what he means—first, what the "general
provisions" are, and, second, whether they apply by their own
force or by reference in the mechanized cargo agreement.[11] The

---

**11.** At another point, also relying on Mercado's deposition, Intership
    proposes that Mercado "admitted that the collective bargaining

point being, I find the defendants' denial of this proposed fact, which relies on Mercado's affidavit, effective, because when it says that the Mechanized Cargo Stipulation is the one that governs the relationship with Intership, it is not plainly contrary to what Mercado stated in his deposition.[12]

On October 26, 2012, the M/V El Morro was docked at Intership's terminal, undergoing loading and unloading operations. At the same time, the M/V Tropic Mist was docked at Intership's terminal waiting for such operations to begin. On that day, Intership terminated and/or suspended some union-member employees. According to the unions, Intership's actions were improper, and a work-stoppage ensued, led by

---

agreement with the mechanized cargo stipulation covers both, general cargo and mechanized cargo." Docket No. 126, ¶ 61. This is not quite what Mercado stated. Rather, he was asked whether he had "delivered to" Intership's counsel "the collective bargaining agreement with the mechanized cargo stipulation with Intership." Docket No. 130-3, at 34. Mercado replied in the affirmative and said, "Which refers to both contracts, general cargo and mechanized cargo." *Id.* Mercado thus maintains the distinction between what he calls two contracts, which distinction Intership repeatedly tries to elide. The proposed fact is thus deemed denied.

**12.** Similarly, I reject the proposed fact at paragraph 37 because it calls for a legal conclusion, *i.e.*, whether the contracts were integrated. Docket No. 136, ¶ 37.

Sánchez, Mercado, and the defendant unions.

Subsequent to the October 26, 2012, work-stoppage, representatives of the unions and Intership met. The unions argued that the CBA required a meeting before disciplinary action. At some point, a stipulation was signed in which all of the parties agreed that they were not waiving any defense of arbitrability or their rights "to submit the dispute"—to what is not stated—"or the interpretation of the" CBAs. Docket No. 126, ¶ 53. At a second meeting, the suspended employees were discussed, but not those that had already been terminated. But because no agreement was reached at the second meeting, Intership "notified that" the sanctions would stay in place against two employees, Rafael Rivera and Joseph Caro; it is not stated who Intership notified. *Id.* ¶¶ 54–55. The day before the second meeting was held, Sánchez filed an arbitration petition; in it, he stated that the CBA had been complied with. Arbitration was requested for sanctioned employees working for Intership in mechanized cargo.[13] These arbitration proceedings

---

**13.** Related to this point, Intership proposes a fact that is only half a sentence; its subject is missing. Docket No. 126, ¶ 28 ("is [*sic*] properly bound by the representations of its attorney in submissions to the Court."). The ambiguous fact is thus denied. In any case, it appears that the proposed "fact" is actually a legal conclusion, and it would be

are pending. At some point, it was "established"—it is not
stated by whom—that Intership violated a provision "of the
cargo agreement,"[14] and it was agreed—again, it is not state by
whom—that a meeting would be held.[15]

Intership deems statements made during these arbitration
proceedings of the utmost important. Indisputably, the
defendant unions, through their presidents, repeatedly
invoked the CBA. For example, Mercado filed a charge before
the NLRB alleging discrimination against Caro and Rivera. In
various letters, Mercado stated that their suspension consti-
tuted a violation of the CBA. Mercado gave testimony before
the NLRB consistent with that statement.[16] Likewise, Mercado

---

denied for that reason too.

**14.** In its proposed fact, Intership states that there was a violation "of the
general provisions," by which Intership presumably means the CBA.
Docket No. 126, ¶ 50. I have used the language in the deposition on
which Intership relies, which appears—though it is not totally clear—to
refer to the mechanized cargo agreement. Docket No. 130-3, at 22.

**15.** The defendants purport to deny this fact on the grounds that "the
employer never accepted that [it] violated anything." Docket No. 131-1,
at 7. This may be so, but the proposed fact is not to the contrary. The
fact is deemed admitted as restated above.

**16.** Intership also proposes that Mercado signed a verified complaint in
which it was alleged that UDEM and Intership were signatories to a

has stated that the CBA required a meeting before disciplinary action could be taken. This is an exhaustion requirement, which Mercado says must generally be complied with before petitioning for arbitration. According to Mercado, to apply for arbitration, the petitioner fills out and submits a document to Puerto Rico's Department of Labor. This form asks whether the petitioner has complied with CBA's exhaustion requirements, and if the petitioner has not, the employer can argue that the dispute is not arbitrable.

### 3. Analysis

In its motion for partial summary judgment, Intership asks the Court to hold the defendants liable for violations of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In essence, this provision permits labor organizations to be sued by employers for violations of a contract between them. 29 U.S.C. § 185(a). The contractual provision Intership claims was

---

CBA that covered the period of October 1, 2007, until September 13, 2013. Docket No. 126, ¶ 65. But as the defendants point out, the court in that case permitted them to withdraw that allegation. *Unión de Empleados de Muelles de P.R., AFL-CIO, Local 1901, ILA v. Int'l Shipping Agency*, Civ. No. 12-1920(FAB), ECF No. 20 (D.P.R. Jan. 14, 2013) (permitting filing of amended verified complaint). Neither Mercado nor UDEM can, then, fairly be held to that allegation.

violated was a no-strike provision that it says was still in operation as of the October 26, 2012, work-stoppage. The question, then, is whether it is established for summary judgment purposes that the no-strike provision was in effect in October 2012.

There is no signed document in the record demonstrating that the no-strike provision, which had been included in the 2004–2010 Mechanized Cargo Stipulation, was extended until October 2012. To the contrary, the last *written* document in the record only extended that clause's effect until January 31, 2012. According to Intership, though, an oral agreement extended the clause still further, including through October 2012. *See, e.g.*, Docket No. 128-10, ¶ 9 (statement under penalty of perjury of Miguel Ayala-Morera). The defendants, meanwhile, have signed statements swearing that the clauses were not extended beyond January 31, 2012, the last date covered by the written extension. Plainly, then, the summary judgment record reveals a factual dispute concerning whether the no-strike provision was in effect on October 26, 2012. Summary judgment would thus seem to be improper, because the defendant labor unions cannot be liable for violating a clause not in effect at the time of the supposed violation.

Notwithstanding this straightforward reasoning, Intership maintains that the Court should deem the no-strike provision in effect as of October 2012 on the basis of "evidentiary and judicial admissions" made by the defendants. *See, e.g.*, Docket No. 125, at 7. It is not clear what "evidentiary" admissions the defendants are meant to have made; certainly, Intership has failed to cite to any instance—in this case or elsewhere—in which the defendants have admitted that the no-strike provision was extended to October 2012. Rather, Intership points to numerous occasions in other proceedings in which the unions have invoked the CBA in relation to the October 26, 2012, work stoppage. According to Intership, *these* statements amount to admissions that the no-strike provision was in effect because "the no-strike promise is the *quid pro quo* for the agreement to submit grievances to arbitration." Docket No. 125, at 6 (citing *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970)). Intership thus asks the Court to find that the unions' invocation of the CBA's grievance procedures *necessarily* implies the existence of a no-strike provision.

Before wading into Intership's argument, it is necessary to consider the lens through which to look at the unions' actions in other forums. Intership calls them "judicial admissions," but

it is wrong to do so. Judicial admissions are, fundamentally, admissions made *in the case at bar*; an admission made in one case is not binding in another.[17] *United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986). Thus, an "admission" made by the unions in another proceeding is not binding here.[18] What the

---

**17.**  In a lengthy footnote, Intership attempts to define the term "judicial admission." Docket No. 125, at 7 n.2. This definition omits the crucial point that an admission made in one proceeding is not binding in another. This is troubling because some of the sources Intership cites acknowledge that very point, which cuts significantly against Intership's argument. *See, e.g.*, 6 MICHAEL H. GRAHAM, HANDBOOK OF FED. EVID. § 801:26 n.9 & surrounding text (7th ed.) ("All judicial admissions in one case are only evidentiary admissions in another case."); *Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 n.2 (7th Cir. 2001) ("[A] judicial admission is binding only in the litigation in which it is made.").

**18.**  In a passage undeveloped enough to constitute waiver, Intership adverts to principles of judicial estoppel. Docket No. 125, at 9–10. But even if Intership's argument were considered, it would fail. At a minimum, "two conditions must be satisfied before judicial estoppel can attach": first, the two positions taken by the party must be "directly inconsistent, that is, mutually exclusive"; and second, "the responsible party must have succeeded in persuading a court to accept its prior position." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32–33 (1st Cir. 2004). As I explain below, however, it is not at all clear that the unions' positions are mutually exclusive; perhaps more importantly, Intership fails to point to evidence that the unions won on this point in another forum. Judicial estoppel is therefore inapplicable.

Interestingly, the record suggests that judicial estoppel might be

unions said elsewhere may be probative evidence, but, like any other evidence, it is subject to contradiction. *Id.* Correctly considered, then, the unions' statements in other proceedings regarding the vitality of the CBA's arbitration clause do not bind them in this case. The unions are entitled to offer evidence contradicting or distinguishing their previous statements, and at trial the factfinder will weigh that evidence as appropriate.[19]

Moreover, it is not at all clear that the logical connection

---

more appropriate *against* Intership. An arbitration award in the record suggests that it had argued that as of October 26, 2012, no arbitration or no-strike clause was in effect; thus, argued Intership, the dispute was not arbitrable. *See* Docket No. 131-21, at 3. The arbitrator apparently agreed, holding that because "no collective bargaining agreement was in force or any other agreement between the parties to submit" the complaint for arbitration, the dispute was not arbitrable. *Id.* at 3–4. According to Intership, this is an incorrect characterization of its arguments, but the document it cites for that proposition is illegible and in Spanish, without a translation that I can find. *See* Docket No. 128-12. In any case, I make no findings on this point, but note the matter because it suggests a great deal of chutzpah in Intership's accusations against the unions.

**19.** Intership makes the confounding argument that the unions "are bound by their admissions under" Federal Rule of Evidence 801(d)(2). Docket No. 125, at 9. Rule 801(d)(2) stands for the hoary proposition that prior statements of party-opponents are not hearsay. As Intership's counsel must know, this provision makes the unions' representatives' prior statements *admissible*, not incontrovertible fact.

that Internship tries to draw between invocation of the CBA and the existence of a no-strike clause is even appropriate, much less mandatory. An invocation is not necessarily an *admission* that the CBA—much less its specific clauses—is in effect, even if it is probative of that fact. To the contrary, such an invocation could be mistaken, invalid, or meant to protect some other right. Indeed, Internship's own motion mentions this third possibility: that in certain cases, resort may be made to an expired CBA's arbitration clause. Docket No. 125, at 8–9 (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)). Reasoning circularly, Internship argues that such an exception cannot apply because "the events related to this case occurred while the CBA was in effect." *Id.* at 9. But the defendants *do* invoke *Litton*, arguing that they were invoking the CBA as it related to certain terms that, unlike the arbitration and no-strike provisions, survive the CBA's expiration. Docket No. 131, at 6–7 (citing *Litton*, 501 U.S. at 206)). To be sure, the defendants' position isn't entirely convincing, but neither can it be dismissed out of hand on the facts before me.

The bottom line is that while Internship has put forth evidence that the arbitration and no-strike clauses were in effect as of October 2012, it has not *established* that fact. Intersh-

ip has failed to prove that the unions' previous statements in other courts mean what Internship believes they mean, much less that they are binding on the unions in this forum. Accordingly, the unions may present evidence—as they have done in their presidents' sworn statements—that contradicts or distinguishes the statements they've made elsewhere. Whether the clauses were in effect in October 2012 is thus a question for trial, and summary judgment is inappropriate.

### 4. Conclusion

For the reasons discussed above, Internship's motion for partial summary judgment, Docket No. 125, is DENIED. Furthermore, Local 1740's motion to stay, Docket No. 148, is GRANTED IN PART, and this case is STAYED pending the resolution of the pending dispute between UDEM and the ILA in Civ. No. 15-1750(FAB).[20] Once that dispute is resolved, the parties in this case have ten days to inform the Court of its resolution.

---

**20.** The motions for summary judgment filed at Docket Nos. 79, 81, and 82, along with their related motion, Docket No. 84, are deemed MOOT. The following motions are granted: Docket Nos. 107, 117, 118, 121, 129, 132, 142, 144, 147. The Court furthermore NOTES the following motions, the substance of which has been dealt with in this Order: Docket Nos. 106, 127, 128, 130, 134, 137, 143, 145, 149, and 150.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of August, 2015.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE